**LANIER BUSINESS PRODUCTS, a Division of Oxford Industries, Inc.,**
**Plaintiff,**

v.

**GRAYMAR COMPANY, etc., Defendants and Counterclaimants,**

**Houston Dictating Machine Co., Inc.,**

**and**

**Telephone Electronics Co., Inc.,**
**Counterclaimants.**

**Civ. No. 71–175.**

United States District Court,
D. Maryland.

March 6, 1973.

Benjamin R. Civiletti, Baltimore, Md., Charles H. Kirbo, Atlanta, Ga., for plaintiff.

George Cochran Doub, Baltimore, Md., Howard W. Fogt, Jr., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Lanier Business Products, a division of Oxford Industries, Inc., brought an action against Graymar Company and individual defendants for breach of contract. Defendants counterclaimed for sums alleged to be due and owing from plaintiff and joined with Houston Dictating Machine Co., Inc. (Houston) and Telephone Electronics Co., Inc. (Telephone) to assert counterclaims for violations of the antitrust laws relating to the dictation equipment market. 15 U.S.C. §§ 1, 2, 18. The Court disposed of the original claim by granting plaintiff's motion for summary judgment in a memorandum opinion and order dated May 16, 1972, 342 F.Supp. 1200. In addition, it was held that Houston and Telephone could legitimately join with Graymar to bring the antitrust counterclaims.

At this time, three motions are to be decided.

### I.

Defendants move to strike all three defenses to their counterclaim for breach of contract. This counterclaim is for a sum alleged to be due from Gray Manu-

facturing Company, an acquisition of Oxford. The motion emphasizes plaintiff's agreement at the hearing on the motion for summary judgment to assume the liability of Gray Manufacturing Company to the plaintiff.

The question is whether this agreement constituted an acknowledgement of a prior debt, which would bar even the defense of the statute of limitations, Brown v. Hebb, 167 Md. 535, 175 A. 602 (1934), or whether plaintiff simply agreed to step into the shoes of its acquisition and assume whatever legal liability it might have.

Defendants cite the following interchange between the attorneys at the hearing:

MR. KIRBO: Well, actually, technically, we wouldn't be liable for this $7000, under the arrangements that we bought it, but if it can be established exactly what the controversy is between Gray and these people, well, we will arrange for it to be paid.

THE COURT: You say technically. In other words, you are saying Lanier did not take over the entire liabilities?

MR. KIRBO: They did assume all the liabilities of Gray is my understanding. The Gray people that we acquired it from were substantial people, and our plaintiff is substantial, and there is no point. If they are actually owed them, we can arrange for that to be credited or paid, and there is no point in anybody—

■ The reasonable interpretation of the words of Mr. Kirbo, plaintiff's counsel, "but if it can be established exactly what the controversy is between Gray and these people, well, we will arrange for it to be paid," and "If they are actually owed" is that plaintiff was only agreeing to assume the liability for whatever was legally owed by Gray Manufacturing Co. The entire discussion centered on the issue of "assumption" since plaintiff contended that tech-

nically it had not assumed the obligations of Gray. To give counsel's remarks the status of a judicial admission would be unwarranted; this motion must be denied.

## II.

■ Defendants and counterclaimants Houston and Telephone move to strike the third and fourth defenses to each of the three antitrust counterclaims. The counterclaims, respectively, allege violations of the "monopoly" and "conspiracy in restraint of trade" sections of the Sherman Act and the "merger" section of the Clayton Act. The defenses respectively are that the defendants and counterclaimants were themselves guilty of violations of the monopoly and restraint-of-trade sections of the Sherman Act, the latter with persons unknown.

As long ago as Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951) a wholesaler allegedly engaged in a price-fixing conspiracy recovered from his suppliers who engaged in an unlawful conspiracy of their own. Justice Black affirmed the trial judge's instruction that a conspiracy by the plaintiff would be no defense. The rationale is that the private action serves a public function, promoting economic efficiency through stimulation of competition. The plaintiff remains vulnerable to suit for his own acts. Thus, it would be proper for plaintiff to state a claim of its own against Graymar, Houston and Telephone. But as affirmative defenses, such allegations are misplaced.

■ The civil antitrust action has two purposes. The first is *remedial*: to afford relief to the aggrieved plaintiff. The second affects the *primary* conduct of the defendant: to deter the illegal exercise of market power. In providing for treble damages and equitable relief, Congress targeted the public consequences of anticompetitive market activity. It would be intolerable to excuse the continuation of conduct detrimental to the common good because of the equally egregious actions of another.

Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968) reinforced this principle. There, Midas Muffler dealers demanded damages from manufacturer Midas, Inc. and its corporate relatives, charging the imposition of a number of vertical restraints—resale price maintenance, requirements contracts, tying arrangements, and territorial restrictions. Defendants countered that plaintiffs, as participants at the inception of the enterprise, were *in pari delicto*. Speaking for four of the Justices, Mr. Justice Black held that as a matter of *primary* legal liability, *in pari delicto* was *no* defense. The public interest demanded that defendants be made to account for their infractions. Justice Black did provide that as a matter of *remedial* law, any *benefits* to the plaintiffs from participating in the illegal activity of defendants could be considered in determining damages. The question remains whether, apart from *in pari delicto*, a plaintiff who actively supported, and was a central participant and moving force in the violations, would be barred. Justice Black found it unnecessary to resolve this issue, while Justice White in a concurring opinion favored barring a suit where the plaintiff and defendant shared equal responsibility for injury resulting to one of them.

It would indeed be counterproductive to permit a suit by the very party whose exercise of anticompetitive market power is responsible for the lawlessness in question.

But the case at bar does not lead to these frontiers of the law. There is no *in pari delicto* problem. *Vis a vis Perma* this case is *a fortiori*.

■ In addition, the contention advanced by Lanier here that it is a defense to commit violations of the antitrust laws to counteract competitors' violations is without merit in law or economic theory. If one price-fixing conspiracy exists, it is possible that other firms will remain outside the conspiracy, putting economic pressure on the illegal combination. If those firms then conspire to raise prices, competition is reduced, prices are generally higher, and the consumer suffers. Similarly, if one firm makes acquisitions which substantially lessen competition, it is no defense for the other firms to make similar acquisitions. This leads to oligopoly, then monopoly.

## III.

Finally, plaintiff moves to transfer this litigation to the Northern District of Georgia. 28 U.S.C. § 1404(a).

Lanier could not originally have brought this action in Georgia, but Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), does not reach the plaintiff in the position of *defending* against *counterclaims*. In this context, effectuation of the statutory purpose shifts the focus to the forum where the counterclaims might have been brought. Whether this could entail severance of counterclaims for transfer need not be reached here.

■ Correspondingly, the considerable discussion of the propriety of a transfer motion by a *plaintiff* is of less interest where the motion focuses on counterclaims. It is by now incontrovertible, however, that a plaintiff may succeed on a motion to transfer upon the satisfaction of the statutory requirements. Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514 (4th Cir. 1955), Philip Carey Manufacturing Co. v. Taylor, 286 F.2d 782 (6th Cir. 1961), Harry-Rich Corp. v. Curtiss-Wright Corp. 308 F.Supp. 1114 (S.D.N.Y.1969).

■ While the federal transfer standard is broader than the common law standard for dismissal on the ground of *forum non conveniens*, Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), it is necessary that the balance of convenience and the interest of justice be strongly in favor of the moving party. Development Co. of America v. Insurance Co. of North America, 249 F.Supp. 117 (D.Md.1967). More important, while a transfer of an antitrust action is permissible, United

States v. National City Lines, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949), see Triangle Industries, Inc. v. Kennecott Copper Corp., 325 F.Supp. 150 (E. D.Pa.1971), the Congressional decision that claimants be given a wide choice of forum in antitrust cases implies that where the choice is within reasonable limits, it should not be disturbed. See Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 953 (9th Cir. 1968).

The determinative criteria are not in question: (1) relative ease of access to sources of proof, (2) inconvenience to parties and to witnesses, including cost of obtaining witnesses and availability of service of process, (3) relative congestion of court dockets. See Gulf Oil Co. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), United States v. General Motors, 183 F.Supp. 858 (S. D.N.Y.1960).

As to Houston and Telephone, based respectively in Texas and Oklahoma, it is of no moment whether the litigation occurs in Baltimore or Atlanta.

Lanier stresses that numerous documents in Atlanta at the corporate headquarters of parent Oxford Industries, Inc. are the heart of this litigation. It is unclear whether any of these have been copied and brought to Baltimore pursuant to pretrial discovery. In addition, Lanier anticipates the presence at trial of thirteen employees, including high-level executives.

Graymar counters that it anticipates calling thirteen employees and thirty-four customers from the Maryland area. While the employee and customer lists might conceivably be inflated, see Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 267 F.Supp. 938 (S.D.N.Y.1967), it is apparent that Graymar will require its officers; and the testimony of customers may have an impact on the legal interpretation of Lanier's activities in Maryland, on the relevant market, and damages. It is not an illusory problem as to the willingness of the customers to travel to Georgia.

The relative size of the participants in this litigation justly refracts these burdens, see Country Maid, Inc. v. Haseotes, 312 F.Supp. 1116 (E.D.Pa. 1970), making it unwarranted to conclude that Lanier, as part of a multimillion dollar national corporate family, bears a disproportionate burden by defending against Graymar, a comparatively small distributor of dictating machines, in the latter's state of residence, Maryland.

This is not a case presenting a forum totally irrelevant to the subject matter of litigation, see Pacific Car and Foundry Co., *supra*. In addition, although the balance of convenience is a *relative* measure, the distance from Atlanta to Baltimore in *absolute* terms, traversable in little more than an hour by air on a route frequently covered by regularly scheduled commercial airlines, diminishes whatever difference might exist. Compare Nye Systems, Inc. v. Lanier Business Products, Inc., Civ. No. 8374 (W.D.Wash.1969).

The marginal consideration of relative congestion of court dockets turns out to be weighted evenly. A footnote is in order, however, pertaining to the eighteen month period between the filing of the counterclaims and this motion. Admitting that legitimate questions of trial tactics *vis a vis* the disposition of the original claim and other motions entered into the decision to wait, and further admitting that an interesting legal complication would have arisen as to the severance of counterclaims for transfer, the Court must recognize that considerable lapse of time entails prejudice to the opposition and duplication of judicial effort. Roberts Bros., Inc. v. Kurtz Bros., 231 F.Supp. 163 (D.N.J. 1964); McGraw-Edison Co. v. Van Pelt, 350 F.2d 361 (8th Cir. 1965); H. L. Green Co. v. McMahon, 312 F.2d 650 (2d Cir. 1962); Leopard Roofing Co. v. Asphalt Roofing Industry Bureau, 190 F. Supp. 726 (E.D.Tenn.1960); Nagle v. Pennsylvania R. Co., 89 F.Supp. 822 (N.D.Ohio 1950), followed in Ingalls v.

Baltimore and Ohio Railroad Co., 161 F. Supp. 579 (N.D.Ohio 1957). The delay did not, however, affect the disposition of this motion.

Where the balance of convenience and interest of justice are in substantial equilibrium, the Court must deny the motion to transfer. The special position of the antitrust law reinforces this result.