505 A.2d 878

**ROGERS REFRIGERATION CO., INC.**

**v.**

**PULLIAM'S GARAGE, INC.**

**No. 758, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 10, 1986.

Jeffrey B. Fisher (Fisher & Walcek, on brief), Marlow Heights, for appellant.

Sheryl J. Negron (Jerome A. Kuta, on brief), Camp Springs, for appellee.

Argued before MOYLAN, WEANT and KARWACKI, JJ.

KARWACKI, Judge.

Rogers Refrigeration Co., Inc., appeals from a judgment of $5,839.51 and costs rendered against it in a suit filed by Pulliam's Garage, Inc., the appellee, to recover for materials provided and services performed in repairing the appellant's motor vehicles. The principal issue presented for our determination is the proper application of the provisions of Md. Code (1975, 1983 Repl.Vol.), §§ 14–1001 through 14–1009 of the Commercial Law Article (hereinafter "the Automotive Repair Facilities Law" or "ARFL").

At a bench trial, the Circuit Court for Prince George's County (Ahalt, J.), after weighing conflicting evidence, concluded that the repairs in question were: ordered by the appellant, necessary to remedy the malfunctions of the vehicles repaired, and properly performed at a reasonable cost by the appellee. Notwithstanding this fact finding by the court, the appellant challenges the judgment below on the ground that the appellee's failure to comply with the Automotive Repair Facilities Law bars its recovery. Specifically, the appellant relies on the failure of the appellee to comply with:

§ 14–1004.

(a) *Required return.*—Except as provided in subsection (b) of this section, an automotive repair facility shall tender return of all replaced parts to the customer.

(b) *Exception.*—Subsection (a) of this section does not apply to replaced parts which are required to be returned to the manufacturer or distributor under a warranty agreement. [and]

§ 14–1008.

(a) In addition to the provisions of § 14–1003 of this subtitle, if the customer is charged more than $50, the invoice shall inform the customer of the following rights:

(1) That a customer:

(i) May request a written estimate for repairs which cost in excess of $50; and

(ii) May not be charged any amount ten percent in excess of the written estimate without his consent;

(2) That the customer is entitled to the return of any replaced parts except when parts are required to be returned to the manufacturer under a warranty agreement; and

(3) That repairs not originally authorized by the customer may not be charged to the customer without the customer's consent.

(b) The provisions of subsection (a) shall be:

(1) Displayed conspicuously in easily readable type;

(2) Physically separated from the other terms of the invoice; and

(3) Listed under the printed heading "Customer's Rights."

### The Facts

The business relationship of the appellant and the appellee began in February of 1981. The appellant was in the business of installing and servicing commercial refrigeration equipment. It owned a fleet of motor vehicles which were used by its employees in that business. Proper operation of those vehicles was crucial to the success of its operations. The appellee owned and operated a small automobile repair facility at Marlow Heights in Prince George's County. The building in which that business was conducted was 60 feet long and 35 feet wide. It employed three to five mechanics during the period involved in this case. Robert M. Hesterberg, the president of the appellee, testified that he personally supervised the repair work performed by his employees and that, "I am involved in every job, I talk to the customers, I take the work in, I write up the tickets, I am the one who ninety percent of the time analyzes the problem with the job and I am the one that gives instructions for repair."

In February of 1981, Fred W. Frazier, Jr., a corporate officer of the appellant, approached Mr. Hesterberg at the

appellee's shop. Mr. Frazier explained, "I was looking for a reliable company to service our vehicles timely because it's very crucial in our business that we have service of our vehicles available to us at all times. That is the nature of our business. If we don't have them, we don't go anywhere." He told Mr. Hesterberg, "that I would like to have our vehicles serviced and on a timely fashion, explained the nature of our business, that it was very crucial and that we have our vehicles serviced timely, and we would give it a trial basis." They agreed that the appellee would service the vehicles and that the cost of the repairs would be billed to the appellant for payment within 30 days.

While the appellee was servicing the appellant's vehicles, the appellant's employee-drivers would deliver the vehicles in need of repair to the appellee's shop, or in those instances when a vehicle became disabled on the road, the appellant would have the vehicle towed to the shop from the point where it broke down. The number of repair jobs performed by the appellee for the appellant varied from week to week from February, 1981 until February of 1982. Some weeks only one repair was made, while in others as many as four vehicles of the appellant were serviced by the appellee.

Invoices for each repair job were submitted to the appellant on completion of the work. None of these invoices contained the statement of "Customer's Rights" mandated by § 14–1008.

Early in the parties' business relationship the appellee's invoices were promptly satisfied by the appellant. After a while, however, the payments became delinquent. Mr. Hesterberg related:

> They would be billed and we are supposed to pay on a thirty day basis, but it never occurred. The first couple of bills were paid within fifteen or twenty days and then, they started dragging their feet with payment, and it would get to thirty, sixty, sometimes as long as ninety days, before I got paid. [and]

Well, when we finally got to the point of these bills that were sitting, not getting paid for, I kept calling Rogers Refrigeration office trying to get in touch with Mr. Frazier, to talk to him, to see why I wasn't getting paid. [and]

When I would ask where the money was, why I wasn't being paid, well, things were a little slow, or money is a little tight, or we'll get it out to you in the next week, and it got to be a pattern where I was waiting thirty, sixty, seventy, eighty days for money, then I would never get the whole bill they owed me paid. They would pay part of the statements and not part of the statements, and so, I always kind of had a running balance going on.

At the time the appellant and the appellee stopped doing business, the balance of the appellant's running account for repairs performed by the appellee was in the amount of $5,839.51 which represented work done in December, 1981 and January and February, 1982. Mr. Frazier testified that the reason the bills submitted by the appellee were not paid was because the repairs had not been properly performed.

### The Appellant's Status

As a threshold rejection of the appellant's defense grounded upon the ARFL, the appellee argues its inapplicability in its case. It asserts that since the ARFL is codified as Subtitle 10 of Title 14 of the Commercial Law Article, entitled "Miscellaneous Consumer Protection Provisions," that we must look to Title 13 of that Article entitled "Consumer Protection Act" for a definition of the consumers who are protected. Under Title 13, "consumer" is defined in § 13–101 as one who receives goods or services "which are primarily for personal, household, family, or agricultural purposes." Consequently, the appellee posits that a commercial user of a motor vehicle, is not within the class protected by this consumer legislation.[1]

---

1. The appellee's argument was not raised in the only case which has reached the appellate courts of this State requiring construction of the ARFL. In Design & Funding v. Betz Garage, 292 Md. 265 (1981), the

The ARFL was originally enacted as Chapter 695 of the Acts of 1974 and was repealed and reenacted as part of the Commercial Law Article of the Code in Chapter 49 of the Acts of 1975. Further amendments, prior to the period of time involved in the instant case, were effected as Chapter 431 of the Acts of 1975 and Chapter 667 of the Acts of 1976.

The protections of ARFL requiring a written estimate of work from a repair facility, if requested, (§ 14–1002), an invoice describing the repairs performed (§ 14–1003), tender of return of all replaced parts (§ 14–1004), and protection from charges for repairs not authorized (§ 14–1006) are expressly extended to a "customer" of an "automotive repair facility." "Automotive repair facility" is defined in § 14–1001(b) as "any person who diagnoses or corrects malfunctions of a motor vehicle for financial profit." "Customer" is not defined, but both § 14–1005 and 14–1007, which describe the remedies available to a customer of a repair facility who has been denied the rights conferred by the ARFL, refer to such a customer as a person. "Person" is defined in § 14–1001(d) as including "an individual, corporation, business trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." Thus, we have a clear legislative intention expressed to extend the protection of the ARFL to commercial users and not to limit them to the class of persons entitled to benefit from the Consumer Protection Act, Md.Code, *supra*, §§ 13–101—13–501 of the Commercial Law Article. As the Court of Appeals observed in *Design & Funding v. Betz Garage*, 292 Md. 265, 273, 438 A.2d 1316 (1981), quoting from *Welsh v. Kuntz*, 196 Md. 86, 93, 75 A.2d 343 (1950):

> [A] court is generally not at liberty to surmise a legislative intention contrary to the plain language of the statute, or to indulge in the license of inserting or omitting

party relying on a violation of the ARFL to resist payment of charges for automobile repairs was a commercial entity. The Court of Appeals assumed that it was entitled to protection under this legislation.

words with the view of making the statute express an intention which is not evidenced in the original form.

Therefore, we hold that the ARFL protects commercial customers of an automotive repair facility as well as individual consumers of that type of service.

### Section 14–1004 Violations

The appellant's claim that it was never tendered "all replaced parts" when its vehicles were picked up after the appellee had performed its service upon them was flatly denied by both Mr. Hesterberg and one of his mechanics who testified at the trial. Their testimony was that such parts were always tendered but that the appellant's representatives consistently refused to accept them. The resolution of this factual dispute was for the trier of the facts. Our review of the record convinces us that the trial judge was not clearly erroneous in concluding that all replacement parts had been tendered to the appellant's representatives following the vehicle repairs performed by the appellee, and we will not disturb his ruling. Md. Rule 1086.

### Section 14–1008 Violations

■ It is undisputed that the invoices sent to the appellant following the servicing of each of its vehicles by the appellee at a cost of over $50 did not contain the notice of "Customer Rights" required by § 14–1008. The trial court concluded that such violation did not bar the appellee's recovery under the circumstances of this case.

The appellant strenuously argues that such a violation renders the contract for such repairs unenforceable as against the public policy prohibition of illegal contracts. We believe that this contention is fully answered in *Design & Funding v. Betz Garage, supra.* In that case Betz sued D & F for $831.30, the cost of repairing two vehicles of D & F. Unlike the invoices in this case, the invoice rendered by Betz when it returned each of the vehicles to D & F bore the explanation of "Customer's Rights" required by § 14–

1008. The first argument of D & F was grounded on the premise that such explanation under the ARFL was required to be given by Betz prior to performing the repairs. The Court of Appeals disagreed.[2] The second issue raised by D & F, and its resolution by the Court of Appeals, is the one apposite to the case *sub judice*. D & F established that Betz had failed to tender the return of most of the parts which had been replaced in the repair of one of the vehicles, a Cadillac automobile, and D & F asserted that such violation of § 14–1004 rendered its contract to pay for the repairs illegal and therefore void and unenforceable. The Court of Appeals rejected that approach.

Pointing out that the ARFL did not prohibit the contract for repairs, but required that Betz comply with its provisions in performing his undertaking, the Court reasoned:

> In the case at bar the contract was to repair the Cadillac at a reasonable price. Betz breached this contract by failing to tender the return of parts, but, as found by the trial court, Betz also corrected the problem which D & F sought to have repaired. The issue is whether the breach by Betz is so material that D & F is entirely excused from performing its promise to pay, or whether, under the doctrine of substantial performance, Betz is entitled to recover despite its breach.

292 Md. at 276, 438 A.2d 1316. And in considering whether the violation of 14–1004 in that case was substantial enough to excuse D & F's performance of its promise to pay, the Court noted:

> The statutory requirement is undoubtedly intended to discourage fraudulent charges for parts which have not in fact been replaced or which have been unnecessarily replaced. Tender of replaced parts also gives the custom-

---

**2.** § 14–1008 was repealed and reenacted with amendments as Chapter 649 of the Acts of 1985, effective October 1, 1985. Under this amendment, with certain exceptions, the automobile repair facility must give the customer written notice of the rights specified therein prior to performing the work.

er an opportunity to take the replaced parts with him for whatever further examination the customer wishes to have made, including attempting to determine whether parts were unnecessarily replaced. We must view the breach by Betz in the light of this statutory policy.

This is not a case in which the breach by Betz is readily compensable by damages. D & F is unable to show whether it suffered any actual loss resulting from the failure to tender return of replaced parts because the replaced parts are the evidence needed to demonstrate whether their replacement was unnecessary. Were we to say that D & F is relegated to a set-off for such damage as it can demonstrate to have resulted from the breach by Betz, it would create a "Catch-22" situation. It would be a frustration of the legislative policy underlying § 14–1004 for the repair facility's own violation to become the basis for finding that its partial performance was nevertheless substantial.

Examining the charges for parts and labor in the invoice to determine those affected by the replacement parts which were not returned or tendered the Court concluded:

Thus, the breach by Betz affected 96.1% of the total Cadillac charges. While the "question of whether there has been substantial compliance and whether a deviation from contract requirements is wilful or justified, is ordinarily a question for the trier of the facts," *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 621, 112 A.2d 901, 906 (1955), we conclude on the facts here that the breach by Betz, as a matter of law, went to the root of the contract. The breach was total and D & F is excused from its promised performance.

Applying this analysis to the case *sub judice,* the contract between the appellant and the appellee was not an illegal one. Rather, the § 14–1008 requirements were impliedly incorporated into its terms requiring the appellee to comply with this legislative mandate as part of its performance of its undertaking under the contract. Therefore the issue which must be resolved is whether the appellee's failure to

give the notice required by § 14–1008 was a material breach of its contract so as to excuse the appellant's performance. In deciding whether the appellee was entitled to recover despite its breach we must determine whether it substantially performed its contract notwithstanding its breach of the § 14–1008 requirements. As the Court of Appeals stated in *Speed v. Bailey*, 153 Md. 655, 660, 139 A. 534 (1927):

> The general rule is thus stated in 6 R.C.L. 926–927: "It is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once. In order to justify an abandonment of it and of the proper remedy growing out of it, the failure of the opposite party must be a total one—the object of the contract must have been defeated or rendered unattainable by his misconduct or default. For partial derelictions and non-performance in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must seek his remedy upon the stipulations of the contract itself. Before partial failure of performance of one party will give the other the right of recission, the act failed to be performed must go to the root of the contract, or the failure to perform the contract must be in respect to matters which would render the performance of the rest a thing different in substance from that which was contracted for. * * * When a covenant goes only to a part of the consideration of a contract, is incidental and subordinate to its main purpose, and its breach may be compensated in damages, such a breach does not warrant a recission of the contract, but the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom." By this rule, compensation in damages for slight breaches is substituted for the remedy afforded by rescission of the whole contract.

The requirements of § 14–1008 were intended to apprise the customer of his rights, in two basic areas, when dealing

with the repair facility. The first deals with the customer's right to demand an estimate of any repairs costing in excess of $50, with protecting the customer against any charge for those repairs in excess of 10 percent of the estimate, and against the cost of any repairs not authorized. The second area is the requirement that the customer be notified of his right to any parts replaced in the course of the repair.

The trial court found as a fact that the parts replaced in each of the repairs in question were in fact tendered to the appellant, and we therefore hold that the appellee's breach of this requirement of § 14–1008 was an inconsequential departure from its undertaking in that regard. The other area of performance mandated by § 14–1008 and implicit in the appellee's undertaking dealt with the appellant's right to demand an estimate in advance where the repairs were to cost more than $50 and the other rights flowing from the estimate when rendered. In determining the effect of the appellee's breach of this § 14–1008 requirement, we consider relevant:

1. The trial court's factual finding that all of the repairs furnished by the appellee were necessary and furnished at a reasonable cost,

2. The lack of any suggestion in the record that the appellant suffered any damages as a result of the appellee's failure to comply with § 14–1008, and

3. The inconsistency between the emphasis placed by the appellant on the expeditious services of its fleet of vehicles because of the "crucial" role they played in the appellant's business and the delay which would have been attendant to the preparation and submission of a written pre-repair estimate.

Under these circumstances, we hold that the failure of the appellee to give the notice required by § 14–1008 of the appellant's right to a written estimate of repairs for each vehicle serviced was inconsequential. Therefore, we perceive no error on the part of the trial judge in awarding the

appellee the reasonable value of the materials and labor expended for the appellant's benefit.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.