PENN–PLAX, INC.

v.

**L. SCHULTZ, INC. d/b/a Lee's Aquarium & Pet Products.**

**No. CIV. A. CCB–97–1445.**

United States District Court,
D. Maryland.

Dec. 17, 1997.

David K. Heasley, William F. Westerman, Edward F. Welsh, Aoi Nawashiro, Armstrong, Westerman, Hatori, McLeland & Naughton, Washington, DC, for Plaintiff.

Francis J. Gorman, Charles L. Simmons, Jr., Gorman & Williams, Baltimore, MD, John J. Murphy, T. Steven Gregor, Murphy Law Offices, Carlsbad, CA, for Defendant.

## *MEMORANDUM*

BLAKE, District Judge.

Penn–Plax, Inc. ("Penn–Plax") has sued L. Schultz, Inc. d/b/a Lee's Aquarium & Pet Products ("Lee's") for false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) (1998), and the Maryland Consumer Protection Act, Md.Code Ann., Com. Law § 13–408 (1990). Now pending are the defendant's motions to dismiss the complaint, to transfer venue to the Southern District of California under 28 U.S.C. § 1404(a), and to issue an order for Penn–Plax to show cause why it should not post $10,000 security for Lee's costs under Local Rule 103(4). No hearing is deemed necessary. *See* Local Rule 105(6). For the reasons explained below, the motion to dismiss the Lanham Act claim will be denied; the motion to dismiss the Maryland Consumer Protection Act claim will be granted; the motion to transfer venue will be denied; and the motion for a show cause order regarding security for costs will be granted.

## *BACKGROUND*

According to its complaint, Penn–Plax owns a patent for an aquarium water filter which is more convenient than conventional water filters because it allows consumers to change filters without disconnecting the air hose. Penn–Plax also manufactures and sells aquarium water filters embodying the patent. In 1992 it informed Lee's that Lee's competing water filters infringed on Penn–Plax's patent. After several rounds of letter ex-

changes between the parties, Lee's altered the design of its filters but not the packages in which they were sold, which still depicted the allegedly infringing design. In August 1994 Lee's admitted that its packaging was inaccurate, but asserted that it would continue to use the packaging until existing stocks were depleted, which was expected to take eight or nine months. Because Lee's continued, however, to use the inaccurate packaging well into 1997, Penn–Plax brought this suit.

### ANALYSIS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). When ruling on a 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations, as well as all reasonable inferences therefrom, as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin,* 980 F.2d at 952; *Westray v. Porthole, Inc.,* 586 F.Supp. 834, 836 (D.Md.1984). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989). In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994); *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995) (affirming Rule 12(b)(6) dismissal with prejudice because plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law); *Faulkner Advertising Assoc., Inc. v. Nissan Motor Corp.,* 945 F.2d 694, 695 (4th Cir.1991) ("self-serving, inaccurate legal conclusions cannot rescue a factually deficient complaint").

### 1. *Lanham Act Claim*

■ Lee's, while conceding that "no court has held that a complaint for unfair competition under Section 43(a) of the Lanham Act must plead that an advertisement is a ... *materially* false representation," (Def.'s Reply Supp. Mot. Dismiss at 2 (emphasis supplied)), argues that this court should erect a heightened pleading standard by requiring that the apparently magic word "material" be included in a section 43(a) complaint. Doing so, Lee argues, would deter claims by "increas[ing] the burden of proof that the plaintiff will ultimately have to show." But a court is not the proper forum for a request to alter the substantive law under the Lanham Act, and neither may a court erect artificial pleading standards. *See Leatherman v. Tarrant Cty. Narcotics Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).

"In order to constitute a violation of § 43(a) of the Lanham Act, the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1138 (4th Cir.1993) (reversing dismissal of complaint where plaintiff repeatedly alleged false representation, noting differences between standards of pleading and of proof). Here Penn–Plax alleges not only that Lee's packaging is false on its face, but also that Lee's admitted as much in a letter to Penn–Plax. "Where the advertising claim is shown to be literally false, the court may enjoin the use of the claim 'without reference to the advertisement's impact on the buying public.'" *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991) (quoting *Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317 (2d Cir.1982)); *see also Castrol, Inc. v. Pennzoil Co.,* 987 F.2d 939, 943 (3d Cir.1993) (holding district court did not err in ignoring defendant's evidence of absence of consumer confusion where advertising claims were literally false); *PPX Enter., Inc. v. Audiofidelity Enter., Inc.,* 818 F.2d 266, 272 (2d Cir.1987) (applying same logic to damages claim, holding that where representation was literally false, district court erred in requiring evidence of

consumer confusion to establish entitlement to damages; noting however that some evidentiary basis would be required on remand to establish proper measure of damages); *Energy Four, Inc. v. Dornier Medical Systems,* 765 F.Supp. 724, 731 (N.D.Ga.1991) ("actually false claims are presumed material," citing *PPX Enter.,* 818 F.2d at 272). Thus, although Penn–Plax may eventually have to prove more to establish a damages amount, its allegations, taken as true as they must be on a motion to dismiss, suffice to state a claim upon which both damages and injunctive relief may be granted.

### 2. *Competitor Standing Under the Maryland Consumer Protection Act*

■ Many states have enacted statutes, commonly known as consumer fraud acts, designed to protect consumers from fraudulent or deceptive practices by merchants. The statutes typically make it easier for consumers to prove fraud by removing certain elements of proof and make it possible for successful consumers to recover their attorney fees. In recent years, however, many businesses have brought claims under the statutes against other businesses. The courts have for the most part resisted these attempts to expand the coverage of these acts but, in some cases, have allowed a business to pursue consumer fraud claims where the business has alleged a consumer-oriented injury.

Edward X. Clinton, Jr., *Do Businesses Have Standing To Sue Under State Consumer Fraud Statutes?,* 20 S. Ill. U. L.J. 385, 385 (1996) (footnote omitted). This case squarely presents the question whether Penn–Plax has standing to sue under the Maryland Consumer Protection Act ("CPA") where it alleges a consumer-oriented injury.

"[C]oncerned that public confidence in merchants offering goods, services, realty, and credit [was] being undermined," the Maryland General Assembly enacted the CPA "to set certain minimum statewide standards for the protection of consumers across the State." § 13–102(b)(1–2); *accord CitaraManis v. Hallowell,* 328 Md. 142, 150, 613 A.2d 964, 968 (1992); *Legg v. Castruccio,* 100 Md. App. 748, 756, 642 A.2d 906, 910 (1994). The statutory purpose is also "to assist the public in obtaining relief from [unlawful consumer] practices." § 13–102(b)(3); *Morris v. Osmose Wood Preserving,* 340 Md. 519, 540, 667 A.2d 624, 635 (1995). Maryland courts have assumed, though arguably in dicta, that only a consumer may be a proper plaintiff. *See CitaraManis,* 328 Md. at 150–52, 613 A.2d at 968–69 (discussion repeatedly uses the word "consumer" rather than "person" in analyzing recovery under the statute; however, the plaintiff in that case was a consumer); *Boatel Indus. v. Hester,* 77 Md.App. 284, 303, 550 A.2d 389, 399 (holding that boat purchased from franchisor for resale by franchisee was not a "consumer good" under the CPA, stating that "[t]he subtitle delineating deceptive trade or unfair practices clearly states that its remedies are limited to 'consumers' purchasing 'consumer goods' "); *Rogers Refrigeration v. Pulliam's Garage,* 66 Md.App. 675, 681, 505 A.2d 878, 881 (1986) (holding that under the Maryland Automobile Repair Facilities Law, "we have a clear legislative intention expressed to extend the protection of the ARFL to commercial users and not to limit them to the class of persons entitled to benefit from the [CPA]"). Additionally, three federal courts have held, in reliance on these Maryland cases, that only consumers have standing under the CPA. *See Layton,* 717 F.Supp. at 371 ("Plaintiffs [franchisees] are not 'consumers' and therefore have no cause of action [against the franchisor] under the [CPA]," citing *Boatel*); *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.,* 958 F.2d 594, 597 n. 9 (4th Cir.1992) (citing *Layton,* 717 F.Supp. at 371); *Pig Improvement Co. v. Middle States Holding Co.,* 943 F.Supp. 392, 407 (D.Del.1996); *but see Microsoft Corp. v. Grey Computer,* 910 F.Supp. 1077, 1088 (D.Md.1995) (granting relief under the CPA to a competitor, but the issue of standing apparently was not raised in that case, and the defendant failed to attend the hearing on the plaintiff's motion for summary judgment). The Maryland Court of Appeals in *Morris* also expressed concern that expanding the class of plaintiffs to businesses "would serve only to reallocate the risks of loss under their contracts without providing any additional protection to consumers." *Morris,* 340 Md. at 540, 667 A.2d at 635

(holding that plywood incorporated into roof of completed house was not "consumer good" at time of purchase by homebuyers; therefore homebuyers had no cause of action against manufacturer); *see also Pig Improvement Co.*, 943 F.Supp. at 407 (holding CPA not meant to apply to sophisticated business people in contract context, relying on the just-quoted passage in *Morris*). Arguably the instant case is different because there is no contract or business relationship between the parties, but the concern with allowing businesses to sue each other under the CPA remains. Moreover, claims between competitors for false advertising are covered by the Lanham Act (which, as discussed below, prohibits *consumer* standing). The Maryland General Assembly undoubtedly focused on consumer remedies, as it found that "existing laws are inadequate, poorly coordinated and not widely known or adequately enforced." § 13–102(2). The General Assembly thus addressed and remedied the problem of inadequate consumer remedies under present law; nowhere does it appear that the General Assembly also felt the need to do the converse—to supplement the law on unfair competition by granting competitor standing under the CPA. *Cf.* Comment, *Maryland's Consumer Protection Act: A Private Cause of Action For Unfair or Deceptive Trade Practices*, 38 Md. L.Rev. 733, 733–735 (1979) (discussing problems for consumer-plaintiffs under pre-CPA law, such as difficulty of proving scienter in fraud action and ability of seller to limit liability by skillful contract drafting).

Penn–Plax, however, claims that this analysis conflicts with the plain statutory text of the CPA authorizing "any person" who sustains injury to bring a damages action. The CPA provides:

> In addition to any action by the Division [of Consumer Protection] or Attorney General authorized by this title and any other action otherwise authorized by law, *any person* may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

Md. Code Ann., Com. Law § 13–408(a) (emphasis supplied). Under the statute, " '[c]onsumer' means an actual or prospective purchaser, lessee, or recipient of consumer goods . . .," § 13–101(c)(1), but " '[p]erson' includes an individual, corporation, business trust, estate, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity," § 13–101(h). Obviously, the argument goes, if the Maryland General Assembly had wished to limit plaintiff standing to consumers, it could have used that word instead of "person" in § 13–408. The previous analysis of the CPA's purpose and the impetus for its enactment, however, requires the issue to be posed in reverse: had the Maryland General Assembly, in a consumer protection statute devoid of any mention of harm to competitors from unlawful consumer practices, contemplated granting a cause of action (as well as an award of attorney's fees, *see* CPA § 13–408) to competitors, that intention could and certainly would have been clearly expressed.

Given the problems addressed by the General Assembly in passing the CPA, its purpose, and its later interpretations by the Maryland courts, my duty in interpreting Maryland law may only be carried out by holding that there is no competitor standing under the CPA. That this conclusion is the correct one is additionally supported by Lanham Act interpretation in two highly significant ways. First, the CPA was passed in 1974. In 1971, the Second Circuit held that consumers had no standing to sue under the Lanham Act. *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 693 (2d Cir. 1971). The General Assembly, concerned with inadequate consumer remedies, would thus have been on notice that the Lanham Act was likely not a source of consumer remedies (but was a clear source of competitor remedies), especially since the decision released a flood of academic and treatise commentary. *See Serbin v. Ziebart Intern. Corp.*, 11 F.3d 1163, 1171 (3d Cir.1993) (reviewing literature published in 1972).

Second, the use in the Lanham Act of the phrase "any person" is as apparently plain as the identical phrase in the CPA, yet the federal courts have interpreted it to exclude consumers and encompass competitors as plaintiffs. Section 43(a) states that "[a]ny person [who violates this section] shall be

liable in a civil action by *any person* who believes that he or she is likely to be damaged by such act." 15 U.S.C.A. § 1125(a)(1) (emphasis supplied). Similar to the CPA, the Lanham Act defines the word "person" to include a "juristic person" (firm, corporation, union, association) as well as a "natural person." 15 U.S.C.A. § 1127 ("person"). In spite of this apparent clarity, the four federal circuits to have considered the question have unanimously held that there is no consumer standing (in the absence of some other reasonable interest to be protected) under § 43(a) of the Lanham Act, finding Congress' purpose in enacting the statute controlling. *See Colligan*, 442 F.2d at 692–93 (concluding that "Congress' purpose in enacting § 43(a) was to create a special and limited unfair competition remedy, virtually without regard for the interests of consumers generally and almost certainly without any consideration of consumer rights of action in particular" (footnote omitted); also noting current trend of states to expand consumer remedies); *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir.1989) (holding seller of business containing his personal name did not retain a reasonable commercial interest to be protected from competitive harm); *Serbin*, 11 F.3d at 1164–65 (conceding as "indisputable" that "Section 43(a) is, as a matter of syntax, sufficiently broad to accommodate consumer claims," but holding that false advertising aspects of the statute were calculated to protect competitors not consumers); *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir.1995) (noting that state law has provided consumers with a remedy for false advertising).[1]

Thus Penn–Plax, as a competitor, can state no claim against Lee's under the Maryland Consumer Protection Act.

### 3. Transfer of Venue

■ Lee's, which is located in San Diego, moves to transfer venue to the Southern District of California. Penn–Plax is a New York corporation. The standards for transfer are (1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice. 28 U.S.C.A. § 1404(a); *see also Lanier Business Products v. Graymar Co.*, 355 F.Supp. 524, 527–28 (D.Md.1973). The moving party, Lee's, has the burden to show that transfer is warranted. "[I]t is necessary that the balance of convenience and the interest of justice be strongly in favor of the moving party." *Id.* at 527. The parties agree, under the first factor, that the action could have been brought in the Southern District of California.

■ Lee's argues that it will be inconvenienced because six of its seven witnesses live in San Diego, and none live in Maryland; because it is a small company which will be extremely burdened both by having to bear

---

**1.** Connecticut, which has a similar in at least some respects deceptive trade practices act, *see CitaraManis*, 328 Md. at 157, 613 A.2d at 971 (finding persuasive Connecticut Supreme Court's holding that actual damages are required to bring suit under its deceptive trade practices act), has interpreted the phrase "any person" to allow competitor standing outside of a consumer relationship between the parties, as long as consumer harm is involved. *See Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 656 A.2d 1009, 1020 (1995). The court reasoned first that the plain language supported competitor standing. Second, it found statements in the legislative history supporting competitor standing. There is no similar record of legislative history in Maryland pertaining to the CPA. Finally, the court found instructive a statutory provision directing that courts construing the scope of the Connecticut act "shall be guided by interpretations given by the Federal Trade Commission and the feder-

al courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1) ....)." The court found this fact persuasive because the "federal courts have repeatedly and historically applied that act's provisions to situations not involving consumers." *Id.* Although the Maryland CPA has a similar provision, § 13–105, under that section comparison to the FTCA is to be used "in construing the term 'unfair and deceptive trade practices.'" Because under the FTCA no private party—consumer or competitor—has standing to sue, *see, e.g.*, Jack E. Karns, *State Regulation of Deceptive Trade Practices Under "Little FTC Acts": Should Federal Standards Control?*, 94 Dick. L.Rev. 373, 375 (1990), I do not find the comparison persuasive or even relevant in any significant way to that point. The FTC has substantial authority to prosecute violations and issue cease and desist orders, but none to grant standing to private plaintiffs to bring private actions to enforce the FTCA.

travel expenses for its officers and senior managers and by having the "heart" of its company miss additional work days due to travel; and because all its corporate records will have to be shuttled between San Diego and Baltimore. It asserts that by filing suit in Maryland rather than New York Penn–Plax has demonstrated that it can afford the extra costs of litigation outside its home state. Lee's also claims that because events giving rise to this litigation also occurred in California, Penn–Plax has ample time, given the early stage of litigation, to find California witnesses.

In reply, Penn–Plax argues that the issue in this case is simple. Either Lee's packaging is false and misleading, or it is not; therefore it is not at all clear that Lee's will need so many witnesses. Additionally, they will be away from their duties during trial, wherever it is held, and the marginal time missed from work due to travel is not likely to be substantial. Penn–Plax also notes that Lee's will have to copy and ship documents to it in New York during discovery in any event; that photocopies are generally admissible in evidence; and that it is unlikely that all of its corporate documents will be needed at trial, as Lee's seems to assume.

Penn–Plax also claims that it may call as witnesses local retailers who allegedly sold Lee's filters in the packaging here at issue after the date Lee's had promised to stop doing so. Major regional distributors of Lee's filters are located in Columbia and Jarrettsville, Maryland. One of Penn–Plax's attorneys lives in Washington, and will be called to testify that he warned Lee's about infringement of Penn–Plax's patent and the allegedly misleading filter packaging, and received assurances that the packaging would be changed. Finally, New York is a relatively short distance away, and Penn–Plax's local counsel is in Baltimore. In sum, it appears merely that transfer would shift the inconvenience from one party to another, which is an insufficient basis on which to grant transfer. *See Quinn v. Bowmar Pub. Co.*, 445 F.Supp. 780, 787 (D.Md.1978) (concluding that "[o]n balance, the plaintiff would be just as inconvenienced by transfer to California as the defendants are inconvenienced by trial in Maryland").

Additionally, Lee's claims that because Penn–Plax did not file on its "home turf," its choice of forum should be given little weight. In the first instance, it is not at all clear that Penn–Plax could have sued in New York. Penn–Plax by affidavit alleges that Lee's filters are currently sold in twenty-two states, but New York is not among the states listed. (John Michels Aff. ¶ 11, Pl.'s Opp.) While Penn–Plax does not assert that personal jurisdiction would be improper in New York, Lee's has the burden to show that it would, i.e. that Penn–Plax could have sued on its home turf, and it has failed to do so. But even if personal jurisdiction could be had over Lee's in New York, Penn–Plax's failure to file on its home turf is not fatal, for "if the plaintiff's choice of forum relates to its legitimate, rational concerns then the plaintiff's choice of forum is still accorded substantial weight." *Waste Distillation Tech. v. Pan American Resources, Inc.*, 775 F.Supp. 759, 764 (D.Del.1991) (holding New York plaintiff had legitimate reasons for suing in Delaware, refusing to transfer action to defendant's home state of California). Here, Penn–Plax alleges that Lee's through its distributors sold filters in misleading packaging in Maryland, thus giving it a rational reason for bringing suit in this District.

■ Finally, Lee's argues that this action should be transferred to California because, after Penn–Plax sued in Maryland, Lee's filed suit against Penn–Plax in California alleging trade dress infringement because Penn–Plax's filters, like Lee's, are blue, and Lee's claims a trademark in that color for aquarium filters. But clearly the California complaint could have been (and still can be) filed as a counterclaim in this action. The motion will be denied.

### 4. Security For Costs

Lee's also moves under Local Rule 103(4) for an order directing Penn–Plax to show cause why it should not be required to give $10,000 security for costs. The Rule applies when the plaintiff both resides out of this district and seeks affirmative relief. When these conditions are met, as they have been

here, the Rule then requires that the court issue a show cause order upon motion. I will therefore issue an order directing Penn–Plax to show cause why it should not post security for Lee's costs.