**Dan KING, et al.**

v.

**JOHNSON WAX ASSOCIATES, INC., et al.**

Civ. A. No. N–82–2267.

United States District Court, D. Maryland.

June 1, 1983.

---

H. Kenneth Kudon and T.J. Pantaleo of Pantaleo & Kudon, Washington, D.C., and Barry L. Steelman of Melnicove, Jaufman, Weiner & Smouse, Baltimore, Md., for plaintiffs.

John B. Wyss of Kirkland & Ellis, Washington, D.C., and John Henry Lewin of Venable, Baetjer & Howard, Baltimore, Md., for defendants.

## MEMORANDUM

NORTHROP, Senior District Judge.

Presently before the court are the venue-related motions of the defendants, Johnson

Wax Associates, Inc. (hereinafter referred to as "JWA") and Undersea Industries, Inc. (hereinafter "USI").

This treble damages antitrust suit was filed as a class action by three individual plaintiffs, two of whom are residents of Alabama, with the third residing in Los Angeles County, California.[1] USI is a Delaware corporation with its principal place of business in Compton, California. It is engaged in the business of manufacturing and distributing scuba diving equipment, specifically the "Scubapro" line. JWA is a Delaware corporation, with its principal place of business in Racine, Wisconsin. JWA is primarily a holding company, owning 100% of USI's stock and nine other subsidiary companies. Additionally, through its "Special Markets Group," JWA directly sells certain products made by subsidiaries to various buyers throughout the United States.[2] Some of these sales have been made to buyers within this District.

Plaintiffs' complaint alleges violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3. Specifically, plaintiffs charge that the defendants conspired, combined and contracted with Scubapro dealers to artificially set retail prices of Scubapro products, and thereby to eliminate price competition in the sale of such products at the retail level. The complaint seeks declaratory, injunctive, and monetary relief.

JWA has moved this Court to dismiss the complaint for improper venue. USI has moved for a transfer of the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). Both issues having been fully and skillfully briefed, and no party having

requested a hearing, this Court will now address the motions, seriatim. *See* Local Rule 6(E).

## I.  VENUE OVER JWA

■ It is well settled that the plaintiff in an antitrust case has the burden of proving venue over any defendant who timely raises the issue. *Caribe Trailer Systems v. Puerto Rico Maritime Shipping Authority,* 475 F.Supp. 711, 715 (D.D.C.1979); *Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. 367, 370 (D.Md.1975), *aff'd in part, rev'd. in part on other grounds,* 554 F.2d 623 (4th Cir.) *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977).

■ Venue in antitrust suits involving a corporate defendant is governed by section 12 of the Clayton Act, 15 U.S.C. § 22 (hereinafter sometimes referred to as "section 12"):

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherein it may be found.

This statute was designed to give an antitrust plaintiff a wider choice of forums in which to sue a corporate defendant than was afforded originally by section 7 of the Sherman Act, as amended by section 4 of the Clayton Act (now 15 U.S.C. § 15).[3] *United States v. Scophony Corp.,* 333 U.S. 795, 804, 68 S.Ct. 855, 860, 92 L.Ed. 1091 (1948). However, section 12 was not intended to provide a forum-shopping plain-

---

1.  Plaintiffs' Motion for Class Certification, filed on November 19, 1982, is not yet ripe for disposition.

2.  The Special Markets Group does not, however, sell any products made by USI. Affidavit of William D. George, Jr., President of JWA at ¶ 5.

3.  15 U.S.C. § 15 provides:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor

in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

In the case of a corporate defendant, this statute's limited bases for venue are covered by the broader language of § 12 of the Clayton Act. Therefore, this Court will focus its analysis on § 12.

tiff with an unfettered choice of venue. To survive JWA's motion to dismiss, plaintiffs must prove that JWA is within the legislatively created venue of this Court, as interpreted by the federal courts.[4]  *Id.* at 804, 68 S.Ct. at 860; *First Pullen Commodity Services, Inc. v. A.G. Becker-Kipnis & Co.,* 507 F.Supp. 770, 775 (S.D.Fla.1981).

■ Section 12 sets out three distinct bases for venue over a corporate defendant. A plaintiff may sue in any district in which the defendant is an "inhabitant," is "found," or "transacts business." If plaintiffs can show that JWA meets any one of the three tests for venue, the motion to dismiss must be denied.

■ A corporation is an inhabitant only of the state of its incorporation. *Aro Manufacturing Co. v. Automobile Body Research Corp.,* 352 F.2d 400, 404 (1st Cir. 1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966); *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.,* 445 F.Supp. 35, 42 (D.Del.1977).  To be found within a district, a corporation must "be present in the district by its officers and agents carrying on the business of the corporation." *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 371–73, 47 S.Ct. 400, 402–03, 71 L.Ed. 684 (1927) (quoting *Peoples Tobacco Co. v. American Tobacco Co.,* 246 U.S. 79, 84, 38 S.Ct. 233, 234, 62 L.Ed. 587 (1918) (construing identical language of § 7 of the Sherman Act)); *Aro Manufacturing,* 352 F.2d at 404; *Athletes Foot of Delaware,* 445 F.Supp. at 42. JWA is incorporated in Delaware.  It has no office, warehouse, plant or other place of business in Maryland.  It holds no assets here, nor does it pay any taxes to this State.[5]  Thus, it is clear that JWA is neither an inhabitant of nor found in this District.  Consequently, to prove venue

over JWA, plaintiffs must show that JWA "transacts business" within this District.

Plaintiffs make two arguments to support their assertion that JWA "transacts business" in Maryland.  First, plaintiffs state that JWA's direct ties with this District amount to the transaction of business. Secondly, it is urged that JWA's conduct and status as parent corporation of USI, which admittedly conducts significant business here, is such that JWA is actually transacting business in Maryland through its subsidiary.  The Court will now address each of plaintiffs' contentions.

A.  JWA's Direct Ties to the District

Although primarily a holding company, JWA has a marketing operation known as the "Special Markets Group" (hereinafter "Group").  The Group sells products made by JWA subsidiaries to "various premium houses, prize houses, promotion houses, and catalog retailers."  Affidavit of William D. George, Jr. at ¶ 5.  The Group sells to over 200 customers throughout the country, with annual sales averaging approximately $570,000.  The Group does not, however, sell any Scubapro products.  Second Affidavit of William D. George, Jr. at ¶¶ 5, 6.

In support of the arguments for a finding of venue in this Court, plaintiffs point out that the Group has, over the last three years, sold various products to two Maryland customers.  Plaintiffs note 16 such sales, totaling $5,369.00.  Plaintiffs characterize these Maryland sales as "frequent and continuous," and argue that the sales are sufficient to constitute the transaction of business by JWA in this District.

■ To meet the "transacts business" test of § 12, plaintiffs must demonstrate that "in the ordinary and usual sense, (JWA) 'transacts business' (in the district) of any substantial character."  *Eastman Kodak Co. v. Southern Photo Materials Co.,*

---

**4.** JWA has not raised in its motion to dismiss under Rule 12 any question of lack of personal jurisdiction, and has therefore waived any such defense.  Fed.R.Civ.P. 12(h)(1)(A).

**5.** The factual statements set out here are taken from the affidavit of William D. George, Jr., the President of JWA.  Plaintiffs have not chal-

lenged these representations, and they are accepted by the Court.  *See Smokey's of Tulsa, Inc. v. American Honda Motor Co.,* 453 F.Supp. 1265, 1272 (E.D.Okl.1978) (factual averments set forth in affidavit accepted as true for purpose of determining venue, unless controverted by opposing party).

273 U.S. at 373, 47 S.Ct. at 403. The question of the substantiality of a corporation's business dealings within a district is one of fact, which hinges on the particular circumstances of each case. *Smokey's of Tulsa v. American Honda Motor Co.,* 453 F.Supp. 1265, 1270 (E.D.Okl.1978); *Grappone, Inc. v. Subaru of America, Inc.,* 403 F.Supp. 123, 130 (D.N.H.1975). However, the courts generally are in agreement that a corporation's contacts with a district must be somewhat regular and continuous; meager, sporadic dealings within the district are not sufficient. *E.g. B.J. Semel Associates v. United Fireworks Co.,* 355 F.2d 827, 832 (D.C.Cir.1966); *Brandt v. Renfield Importers,* 278 F.2d 904, 911 (8th Cir.), *cert. denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 226 (1960); *Athletes Foot of Delaware v. Ralph Libonati,* 445 F.Supp. at 44; *In re Chicken Antitrust Litigation,* 407 F.Supp. 1285, 1291 (N.D.Ga.1975). It is also clear that a defendant may be found to be transacting business within a particular district even though its dealings with customers therein are entirely interstate. *Eastman Kodak,* 273 U.S. at 373, 47 S.Ct. at 403. Therefore, should the court determine that the Group's sales to its two Maryland customers are substantial, venue will not be defeated by the absence of any personal solicitation by JWA agents in the state.

■ The Group's direct sales to this district previously mentioned occurred between February, 1980, and January, 1982. JWA points out that these sales represented less than one percent of JWA's total sales for the period.[6] However, case law makes it clear that it is not the percentage of a corporation's business in the district one looks to in resolving the venue question. *See Brandt v. Renfield Importers,* 278 F.2d at 911; *Green v. U.S. Chewing Gum Co.,* 224 F.2d 369, 371–72 (5th Cir.1955); *Lippa & Co. v. Lenox Inc.,* 305 F.Supp. 175, 180–81 (D.Vt.1969). This rule is eminently sensible. If the percentage of a corporation's

total national sales was the determining factor, plaintiffs in small districts would have a very difficult time establishing venue over companies that conduct business in every state. The courts therefore look instead to the particular quantum of business conducted by the defendant in the district. *B.J. Semel Associates,* 355 F.2d at 832. The defendant's volume of business must be evaluated from this point of view of the average businessman, not the corporate giant. 305 F.Supp. at 180. Thus, the factual question this Court now must determine is whether JWA's sales in Maryland amount to transacting business, when considered from the viewpoint of the average Maryland businessman.

■ During the time period relied upon by plaintiff to establish JWA's contacts in the district, sales to Maryland customers averaged $2,147.60 per year.[7] During its best calendar year (1981) JWA had sales in Maryland of $4,439.10, and in its best twelve month period (October, 1980—September, 1981), JWA's sales were $5,205.77. In the most recent twelve month period set forth by plaintiffs, total sales here were $423.98. While there is no magical formula to guide the Court, I am convinced that the sales figures upon which plaintiffs rely to establish venue do not amount to substantial business in this District. The average Maryland businessman is not likely to consider average annual sales of about $2,000, and an annual best of around $5,000, to be substantial Maryland business. The JWA Group's sales to its Maryland buyers are thus insufficient to establish venue in this District.

One other factor militates against finding proper venue over JWA on the basis of its Maryland sales. According to JWA President George, the two Maryland companies have ceased to be customers of JWA. *See* Second Affidavit of William D. George, Jr. at ¶ 4 ("In the past there were only two customers in Maryland, and now there are

---

**6.** Using Mr. George's figure of $570,000, approximate annual sales in this district constituted .942% of total sales.

**7.** *See* plaintiff's Response at 5 and Exhibit 1. The annual sales figure is based on the 30 month period between January, 1980 and June, 1982.

none"). Indeed, the evidence shows that JWA's last sale in Maryland occurred in January, 1982. *See* plaintiffs' Response at Exhibit 1. The instant suit was filed on August 5, 1982. There is some dispute regarding when a corporation must be conducting business in a district to be "transacting business" therein for venue purposes under section 12. *Compare In re Chicken Antitrust Litigation,* 407 F.Supp. 1285, 1293 (N.D.Ga.1975) (when suit is filed) *with Board of County Commissioners v. Wilshire Oil Co.,* 523 F.2d 125, 131 (10th Cir.1975) (when cause of action accrued).

■ This Court is persuaded by the reasoning of Judge O'Kelley of the Northern District of Georgia who held in the *Chicken* case, *supra,* that at least when the contacts relied upon to establish venue bear no relation to the plaintiffs' suit, the point at which the defendant must be transacting business in the district is the time the suit is filed. *See also Lee v. Ply\*Gem Industries,* 593 F.2d 1266, 1273 n. 58 (D.C.Cir.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). Courts which have used the time the cause of action accrued as the relevant point for ascertaining venue did so to prevent corporations from committing illegal acts within a district and then avoiding suit therein by fleeing that district. *Snyder v. Eastern Auto Distributors,* 357 F.2d 552, 556 (4th Cir.), *cert. denied,* 384 U.S. 987, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966); *Nelson v. Victory Electric Works,* 210 F.Supp. 954, 956–57 (D.Md.1962); *L'Heureux v. Central American Airways Flying Service,* 209 F.Supp. 713 (D.Md. 1962); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3811, at 66–68 (1976). Such is not the case here. JWA's sales to its two Maryland customers are not alleged to be at all related to the substance of plaintiffs' claims. Accordingly, there is no reason to transform the present tense "transacts business" of section 12 to the past tense. Since JWA sales to its Maryland customers had ended by August 5, 1982, those sales are insufficient to establish venue in this Court.

Plaintiffs cite two additional examples of what they see as JWA's direct contacts with this District. First, plaintiffs point to JWA advertisements in four magazines of national circulation which are available in Maryland. Second, plaintiffs state that a JWA subsidiary, Old Town Marine, operates a plant in Maryland from which the Group makes substantial purchases.

■ With regard to the magazine advertisements, solicitation in a district is relevant to a determination of whether the defendant has transacted business there. *Eastman Kodak,* 273 U.S. at 374, 47 S.Ct. at 404. However, for purposes of section 12, this Court agrees that "[n]ational advertising which finds its way into a particular jurisdiction is insufficient to support a finding of transaction of business." *San Antonio Telephone Co. v. American Telephone & Telegraph Co.,* 499 F.2d 349, 351–52 n. 5 (5th Cir.1974), quoting *Albert Levine Assoc. v. Bertoni & Cotti,* 309 F.Supp. 456, 460 (S.D.N.Y.1970). The magazine advertisements thus do not establish venue. And, with regard to the plant operated by a JWA subsidiary, JWA president George states by affidavit that Old Town Marine has only one plant, located in Old Town, *Maine,* not Maryland. Second George affidavit at ¶ 6. As this affidavit is uncontroverted, the Court must conclude that plaintiffs are mistaken. I thus find that none of JWA's supposed direct contacts with this District, nor the combination thereof, are sufficient to establish venue in this Court.

B. JWA's Ties to the District through its Subsidiary, USI

It is undisputed that USI transacts substantial business in this District. In arguing that JWA should be subject to suit here as the parent corporation of USI, counsel for the plaintiffs state "[t]he preponderence of the evidence shows that since Johnson Wax' acquisition of Scubapro, Johnson Wax has taken over control of the actual management of Scubapro." Plaintiffs' Response at 10. Plaintiffs' evidence of JWA's control over USI consists mainly of JWA's ownership of all USI stock, interlocking di-

rectorships, and requirements that JWA be informed of or approve certain USI activities.

■ Plaintiffs are correct that, under § 12, the test for venue over a parent whose subsidiary conducts business in the district is whether the parent exerts sufficient control over the subsidiary to enable it to direct the subsidiary's internal affairs. *United States v. Scophony Corp.,* 333 U.S. 795, 814, 68 S.Ct. 855, 865, 92 L.Ed. 1091 (1948); *Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. 367, 373 (D.Md.1975), *rev'd. in part on other grounds,* 554 F.2d 623 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). The pertinent question then, is whether, when viewing "the totality of the relationship" between JWA and USI, JWA has controlled USI to such an extent that this Court should pierce JWA's corporate veil and subject it to suit here on the sole basis of USI's Maryland business transactions. 391 F.Supp. at 371.

■ First, it is clear that JWA's 100% ownership of USI's stock does not alone establish venue over JWA. *Scophony,* 333 U.S. at 814, 68 S.Ct. at 865; *Caribe Trailer Systems v. Puerto Rico Maritime Shipping Authority,* 475 F.Supp. 711, 717 (D.D.C. 1979). The same is true of the interlocking boards of directors of the two companies.[8] 475 F.Supp. at 718. Neither of these factors cited by plaintiffs help them establish venue unless JWA is also exercising the requisite degree of control over USI's operations.

■ As evidence of control, plaintiffs rely heavily on the requirement that JWA approve all USI capital expenditures of $50,000 or more. *See* plaintiffs' Response at 9. Plaintiffs contend that such a requirement can mean nothing but that JWA controls USI's business decisions. I cannot agree. In view of the fact that USI makes all operational decisions, such as pricing and marketing, without assistance from JWA[9] (*see* affidavit of USI Executive Vice President Richard J. Bonin, Jr., at ¶¶ 3–11), JWA's approval of major capital expenditures seems entirely consistent with its financial interest in USI as holder of its stock. In fact, the requirement for approval of major capital expenditures is not wholly unlike provisions in state corporation codes which require shareholder approval of certain extraordinary corporate acts.[10] Therefore, in the absence of accompanying evidence of control over ordinary business operations, JWA's approval of certain capital expenditures is not sufficient to establish venue.

■ Nor is plaintiffs' other major piece of evidence an indicia of significant control over USI by JWA. Plaintiffs have submitted a copy of a telex sent by JWA president George to the presidents of all JWA subsidiaries. In it, JWA requested information regarding its subsidiaries' long range financial and marketing plans. *See* plaintiffs' Exhibit 18. Plaintiffs cite language in the telex such as a reference to "how *we* manage the business," (emphasis added). Of course, plaintiffs ignore language such as "the strategic direction for *your* company" (emphasis added). Rather than dissect the telex word for word, I have viewed it as a whole and have reached the conclusion that it is not enough to evince control over USI's management. JWA's request of its subsidiaries was basically for information. All major stockholders share an interest in being informed of their companies' long-term goals. I thus find that the data requested by the George telex is not inconsistent with JWA's role as a holding company, and does not indicate control over USI sufficient to satisfy § 12.

Plaintiffs cite other minor examples of JWA's ties to USI, such as the one-time use of JWA stationery by USI's president, loans

---

**8.** Two USI directors are directors and officers of JWA. Affidavit of Richard J. Bonin, Jr. at ¶ 4.

**9.** *Compare Call Carl,* 391 F.Supp. at 375–76 (venue established over parent upon evidence

that parent controlled subsidiary's marketing unit).

**10.** *See, e.g.* Md.Corps. & Ass'ns. Code Ann. § 3–105(d) (1975).

by JWA to USI, and shared legal counsel, as evidence of JWA's control of USI. I am not persuaded. While such ties indicate a relationship between the companies, totally consistent with parent-subsidiary status, they do not indicate any degree of control whatsoever. Plaintiffs' "evidence" of JWA's control over USI falls far short of establishing the requisite degree of control for purposes of section 12, and JWA's motion to dismiss for improper venue must either be granted or alternatively the case must be transferred pursuant to 28 U.S.C. § 1406(a).[11]

## II. USI'S MOTION TO TRANSFER

■■■ The federal venue transfer statute, 28 U.S.C. § 1404(a) (hereinafter section 1404(a)), states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

USI has moved for a transfer of this action to the United States District Court for the Central District of California. As the moving party, USI has the burden of establishing that the statutory requirements are met. *See Debbis v. Hertz Corp.,* 269 F.Supp. 671, 684 (D.Md.1967). These requirements, though, are not as stringent as was the common law standard of *forum non conveniens.* Section 1404(a) is more than a mere codification of the common law rule. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Instead, section 1404(a) provides a standard for transfer which is considerably broader than that applied by the courts when dismissing a case for *forum non conveniens. Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *Lanier Busi-*

*ness Products v. Graymar Co.,* 355 F.Supp. 524, 527 (D.Md.1973). Indeed, the statute was designed to "allo[w] easy change of venue within a unified federal system." *Piper,* 454 U.S. at 254, 102 S.Ct. at 265. The transfer decision rests within the broad discretion of the district judge. *Paesch v. Winter,* 366 F.2d 756 (4th Cir.1966). To reach the decision, the relative conveniences must be balanced, and the motion should be granted only if "the balance of convenience and the interest of justice (are) strongly in favor of the moving party." *Lanier,* 355 F.Supp. at 527. With these guidelines in mind, I will now address USI's motion.

■■■ As a preliminary matter, it is undisputed that venue and personal jurisdiction over USI are proper in this Court, and in the Central District of California should the case be transferred. Therefore, in the context of the plaintiffs' suit against USI, either court is one "where it might have been brought" for the purposes of section 1404(a).

■■■ There can be little question that upon balancing the convenience of the *parties* to the suit, the scales tip in favor of USI. USI's principal office and manufacturing facilities are located in Compton, California, within the district to which transfer is sought. USI has no Maryland offices. Of the companies' six top managers, four live in California. None live anywhere near Maryland. All of the corporate records are located in California. Should the case proceed to trial in this Court, USI personnel and documents will have to be shuffled back and forth between Los Angeles and Baltimore. Clearly, this would inconvenience USI.

On the other hand, it is hard to envision how a transfer to California would incon-

---

11. The obvious question which arises upon granting JWA's motion is in what district could both JWA and USI be sued. One proper forum is the District of Delaware, since both companies were incorporated there. Additionally, it now seems to be settled that § 12 of the Clayton Act is not exclusive, and therefore the general "federal question" venue statute, 28 U.S.C. § 1391(b), supplements § 12 in antitrust cases. *See Ballard v. Blue Shield,* 543 F.2d 1075, 1080 (4th Cir.1976), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977). Plaintiffs could thus sue both defendants in the district "in which the claim arose." A "weight of contacts" test is applied to determine if the claim arose in a particular district. Athletes Foot of Delaware, 445 F.Supp. at 45. Plaintiffs here have not alleged that any of the claims upon which they sue arose in this District. *See also* part III *infra.*

venience the plaintiffs. One of the named plaintiffs actually lives within the Central District of California, while the other two are residents of Alabama. And, should a class eventually be certified, the interests of the class would seem better served by a trial in Los Angeles than by one in Baltimore, as many more class members would likely reside in close proximity to the courthouse.[12] In short, as far as the parties are concerned, there is virtually no reason to keep the case here, while there is substantial cause for a transfer to the Central District of California. The first balancing test therefore weighs heavily in favor of USI.

With regard to the relative convenience of the witnesses, the issue is less clear. It seems evident, though, that in light of plaintiffs' allegations of a nationwide price fixing conspiracy between the defendants and Scubapro dealers, the testimony of representatives of the defendants and of various dealers will be required. As has been established, USI's representatives are likely to be found in the Central District of California.[13] It also seems likely that the dealers who would testify would benefit from a transfer to Los Angeles. Of the 493 licensed Scubapro dealers, 158 are located in the five western states of California, Hawaii, Oregon, Washington and Colorado. Forty-nine of those dealers apparently are within the subpoena power of the federal courthouse in Los Angeles. It would seem, then, that a transfer to that court would be convenient, on the whole, for USI's witnesses.

Plaintiffs counter by asserting that such transfer would inconvenience its witnesses. They zero in on one witness in particular, a retired Scubapro dealer named Stuart Stenchfield. It is represented that Mr. Stenchfield will present evidence of price-fixing in the Maryland-District of Columbia-Northern Virginia market, and that such evidence is crucial to plaintiffs' case. I do not dispute these assertions. What is left unsaid, though, is that plaintiffs surely will not rest on Mr. Stenchfield's testimony. To prove the type of case plaintiffs have alleged surely will require more than the testimony of one dealer who operated in a region responsible for a very minor percentage of Scubapro sales.[14] This case, especially if certified as a class action, will be nationwide in scope. The testimony is likely to be the same. Although no one can at this time specify with any degree of certainty who will testify at trial, if there indeed is a trial, it seems probable that, on balance, witnesses will be inconvenienced no more by a trial in Los Angeles than by one here.[15]

In addition to arguing that USI has not met its statutory burden under

---

12. The class would consist of purchasers of certain Scubapro equipment. In 1981, total Scubapro sales in California were $1.49 million, while Maryland sales during that year were just under $111,000. Affidavit of Richard J. Bonin, Jr. at ¶¶ 4, 5; see note 5, supra.

13. Since JWA has neither joined nor opposed USI's motion to transfer, the convenience of its representatives will not be considered here. However, in light of the fact that JWA's offices are located in Wisconsin, it would seem improbable that the requested transfer, if granted, would significantly inconvenience JWA.

14. Plaintiffs have listed six other dealers whose testimony they expect to present at trial. However, with regard to these dealers, plaintiffs admit: "it is assumed for the present that their testimony will be offered by deposition." Plaintiffs' Response at 7. It seems, therefore, that the situs of the trial will make little difference to the named dealers.

15. Plaintiffs assert in their opposition memorandum that USI must identify the witnesses that will be inconvenienced, and that probabilities may not be relied upon to carry its burden as moving party. It seems, though, that to require detailed witness lists at this stage of a proceeding as potentially complicated and far-reaching as the instant suit would be impractical, at best. And, I agree that,

> ... the decision to transfer is preliminary to discovery on the merits, and that motions to transfer should be acted upon at the threshold of the litigation. *Goodman v. Fleischmann,* 364 F.Supp. 1172, 1176 (E.D.Pa.1973).

The transfer of an antitrust suit "at the threshold of the litigation" requires at least some inquiry into the probabilities raised by the particular situation. I therefore do not discern from the cases the rigid rule plaintiffs assert.

§ 1404(a), plaintiffs argue that, as antitrust plaintiffs, their choice of forum should be accorded great deference. *See, e.g. Ferguson v. Ford Motor Co.,* 89 F.Supp. 45, 51 (S.D.N.Y.), *appeal dismissed,* 182 F.2d 329 (2d Cir.1950). In light of the particular facts of this case, plaintiffs' argument is unavailing. Although the "venue privilege" is much cited by the courts, in the opinion of this judge such a privilege loses most, if not all, of its force when the plaintiff has sued in a foreign jurisdiction. *Cf. Piper Aircraft Co. v. Reyno,* 454 U.S. at 255–56, 102 S.Ct. at 265–266 (discussing common law rule of *forum non conveniens* ); *New Image, Inc. v. Travelers Indemnity Co.,* 536 F.Supp. 58, 59 (E.D.Pa.1981). Here, the plaintiffs have neither been injured in, nor reside in this District. The policy grounds for a venue privilege therefore are not present, and that argument must fail.

█ In sum, I find that the convenience of the parties will be served substantially by a transfer to the Central District of California. The witnesses which will testify should a trial eventuate will be no more inconvenienced if the case is transferred than if it stays here. On the whole, then, I find the balance of conveniences to be significantly in USI's favor. Because I also find that the interests of justice will be served by transferring this case to a more interested forum, I hold that USI has met its burden, and that the case should be transferred to the Central District of California.

### III. DISPOSITION

As set out in the proceeding section, the plaintiffs' action against defendant USI will be transferred to the United States District Court for the Central District of California. In part I of this Memorandum, I held that the plaintiffs' suit against defendant JWA was not properly brought in this District and that JWA's motion to dismiss might be granted. I think, though, that justice would be served best if, rather than dismissing the case against JWA, I transfer it to the California court along with the suit against USI. 28 U.S.C. § 1406(a). That Court can then determine whether it has proper venue over JWA, if JWA raises the issue.

A separate Order will be entered confirming the decision herein.