Charles H. SANDERSON, Sr., Plaintiff,

v.

**SPECTRUM LABS, INC., Bob J. Johnson and Associates, Inc., and the Water Quality Association, Defendants.**

**No. CIV. 1:99CV371.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 12, 2000.

---

Scott Charles Campbell, Campbell and Hendren, Indianapolis, IN, Robert Hendren, Indianapolis, IN, for Charles H. Sanderson, Sr.

Randall L. Morgan, Snyder Birch and Morgan, Syracuse, IN, Howard B. Sandler, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, Dennis J. Powers, Piper Rudnick, Chicago, IL, for Spectrum Labs, Inc.

Robert T. Keen, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, for Bob J. Johnson and Assoc., Inc.

Arthur G. Surguine, Hunt Suedhoff Kalamaros, LLP, Fort Wayne, IN, for Water Quality Ass'n.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on several motions filed by the various defendants. On October 22, 1999, the defendant Water Quality Association ("WQA"), filed a Rule 12(e) Motion for a More Definite Statement. The plaintiff, Charles H. Sanderson, Sr. ("Sanderson"), filed his response on November 3, 1999. Also on November 3, 1999, the defendant Spectrum Labs, Inc. ("Spectrum") filed a Motion to Dismiss Complaint for Lack of Personal Jurisdiction, Improper Venue and Failure to State a Claim. On this same date Spectrum also filed a Rule 41(d) Motion for Award of Costs and to Stay Proceedings. Sanderson responded to these motions on November 22, 1999, to which Spectrum replied on December 13, 1999.

On December 8, 1999, the defendant WQA and defendant Bob J. Johnson and Associates, Inc. ("Johnson") each filed a motion to dismiss [1]. On December 21, 1999, Sanderson responded to these motions to dismiss. On January 3, 2000, Johnson filed its reply and on January 4, 2000, WQA filed its reply.

For the following reasons, Spectrum's, Johnson's and WQA's motions to dismiss will all be granted. Spectrum's motion for an award of costs will also be granted.

## Discussion

### Spectrum's Motion to Dismiss

According to Sanderson's complaint he is engaged in the business of designing, licensing, manufacturing, marketing, and sale of "magnetic devices for the control of scale and improvement of water performance and other beneficial changes in water systems." Complaint at ¶ 3. Sanderson alleges that the defendants, who have business interests in chemical water treatment, have violated the Sherman Act and the Lanham Act "through a campaign of oral and written statements which are false, or which omit material facts, about the products, inventions and businesses of Plaintiff, who is in competition with Defendant Spectrum Labs, Inc. Bob J. Johnson & Associates, Inc. and with members of the Defendant Water Quality Association, which statements have the capacity to deceive and do deceive persons in purchasing positions throughout the world." Complaint at ¶ 23.

In support of its motion to dismiss, Spectrum first points out that on March 5, 1999, Sanderson filed a complaint against Spectrum and Duane E. Nowlin, Civil No. 1:99cv86, alleging violations of the Lanham Act. On June 9, 1999, this court granted the defendants' motion to transfer to the case to the District of Minnesota, pursuant to 28 U.S.C. § 1406(a). The basis of the order transferring the case was the fact that this court did not have personal jurisdiction over the defendants. However, after the case was docketed in the District of Minnesota, Sanderson voluntarily dismissed the case pursuant to Fed.R.Civ.P. 41(a)(1).

Sanderson has now filed the present action alleging a Lanham Act claim against

---

**1.** WQA's motion to dismiss is offered in the alternative to its motion for more definite statement.

Spectrum, WQA, and Johnson. Sanderson also alleges that there was a conspiracy among these defendants to restrain trade in violation of Section 1 of the Sherman Act. Sanderson has also asserted state law claims for intentional interference with contractual relations and prospective economic advantage.

Spectrum notes that the substantive allegations contained in Sanderson's previous complaint are repeated almost verbatim in his newly filed complaint. Spectrum asserts that nothing has changed with respect to Spectrum's lack of contacts with the State of Indiana and thus it should be dismissed from this action.

■ "A fundamental precept of common law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...'" *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Precluding parties from contesting matters that they have had a full and fair opportunity to litigate "protects their adversaries from the expense and vexation of attending multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana,* 99 S.Ct. at 973.

■ Clearly, collateral estoppel applies to personal jurisdiction rulings. While the issue usually arises in the context of a ruling that collateral estoppel applies to a prior determination by a state court that it lacks personal jurisdiction, it would apply equally to a federal court's own ruling that it lacks personal jurisdiction. "[I]f a defendant appears to challenge personal jurisdiction and loses, disposition of a challenge is directly binding as a matter of res judicata..... The same principle means that a ruling against personal jurisdiction is also binding by way of issue preclusion so long as the same legal standards apply to basically unchanged facts." 18 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure,* 4430 (1981).

■ In the present case, Sanderson attempts to avoid this court's prior jurisdictional ruling by adding two other parties, a Sherman Act restraint of trade claim, and allegations of conspiracy. Spectrum contends that the purported conspiracy that is the basis for Sanderson's Sherman Act claim existed at the time that he filed his earlier case in this court. Spectrum further contends that the new Sherman Act claim is not premised on any activity that has occurred since the filing of Sanderson's prior complaint.

In response, Sanderson refers to his affidavit and asserts that activity occurring subsequent to his earlier suit has created a new cause of action. Sanderson's affidavit refers to an article in the July, 1999, *Water Conditioning and Purification Journal,* in which Spectrum's president, Duane Nowlin, commented generally regarding the magnetic treatment of water. Sanderson also argues that Dr. Nowlin, while at a NACE (National Association of Corrosion Engineers) meeting, "failed to make mention of position papers emanating from Cranfield University."[2] In reply, Spec-

---

2. Sanderson Aff. at ¶ 26.

trum argues that Sanderson has failed to explain how these acts have any bearing on Sanderson's new claim of a conspiracy to restrain trade in violation of the Sherman Act. In fact, Sanderson has not even asserted that the alleged acts relate specifically to Sanderson or his products.

In light of this court's earlier finding of lack of personal jurisdiction and Sanderson's failure to predicate his new Sherman Act claim on any recent activity by Spectrum, this court finds that Spectrum's argument with respect to collateral estoppel is well-taken.

Spectrum next argues that even if Sanderson is not collaterally estopped from bringing the present suit, venue is improper in the Northern District of Indiana. The relevant venue provisions for the Sherman Act are § 4 and § 12 of the Clayton Act, 15 U.S.C. § 15 and 15 U.S.C. § 22, respectively. Section 12 is the broader of the two venue provisions and governs corporations [3]. Thus, a discussion of venue in a Sherman Act claim against a corporation generally need only analyze Section 12 of the Clayton Act which provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.S. § 22.

 A corporation is an "inhabitant" of the state of its incorporation and is "found" in districts where it is present and carrying on continuous local activities.

Chromium Ind., Inc. v. Mirror Polishing & Plating Co., Inc., 448 F.Supp. 544, 550 (N.D.Ill.1978). The general test for determining whether a corporation is transacting business is whether, according to everyday business concepts, a corporation transacts business of a substantial nature within the district. United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). This test uses the practical and broader business concept of a corporation engaging in substantial business operations within the district. Id. at 866. Various factors are considered in determining the substantiality of business, including the extent of business solicitation and advertising within the district, the dollar amount and percentage of sales in the district, and the continuity and regularity of the defendant's business activities in the district. Chromium Ind., 448 F.Supp. at 550.

 This court has already determined that Spectrum (like Nowlin) is not subject to general personal jurisdiction because, "[t]here is no allegation or evidence that either regularly does business, engages in a persistent course of conduct, or derives substantial revenue from goods or services in the state." June 9, 1999 Order at 12. This finding establishes that Spectrum does not transact business or engage "in any substantial business operations" for venue purposes under Section 12 of the Clayton Act. Spectrum is a Delaware corporation with its only office located in St. Paul, Minnesota. Spectrum has no facilities or employees in Indiana. Spectrum is not registered to do business in Indiana, and does not advertise in publications specifically targeted to residents of Indiana. Spectrum has no sales distributors or salesmen in Indiana and in 1998, only four-

---

**3.** Section 12 also provides for nationwide service of process, but absent venue in the proper forum, the nationwide service provided for in § 12 is ineffective. Wood v. Santa Barbara Chamber of Commerce, 507 F.Supp. 1128, 1141 (D.Nev.1980).

tenths of one percent of Spectrum's sales revenue was generated from sales made to customers in Indiana. In 1997, only one-tenth of one percent of Spectrum's sales revenue was generated from sales made to customers in Indiana.

In his complaint, Sanderson does not include allegations as to any activity engaged in by Spectrum in the Northern District of Indiana. Rather, Sanderson merely alleges that Spectrum "transacts business in Indiana and other states." Complaint at ¶ 4. A mere unsupported allegation that a defendant "transacts business" in a particular state is clearly insufficient to allege proper venue in a particular district. *Massachusetts School of Law at Andover, Inc. v. American Bar Assn.*, 107 F.3d 1026, 1042 (3d Cir.1997).

In response to Spectrum's motion to dismiss, Sanderson suggests that a relaxed venue standard applies to federal antitrust law and that venue is proper if he alleges that he has suffered injury in this district. However, the law is clear that in an antitrust action the burden is on the plaintiff to prove jurisdiction and venue. *Redmond v. Atlantic Coast Football League*, 359 F.Supp. 666 (S.D.Ind.1973). Thus, a plaintiff cannot merely plead that a defendant is "transacting business", but must plead sufficient facts demonstrating that the defendant transacts business of a substantial nature within the district. *United States v. Scophony Corp.*, 333 U.S. 795, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). Various factors are considered such as the extent of business solicitation and advertising within the district, the dollar amount and percentage of sales in the district, and the continuity and regularity of the defendant's business activities in the district. *Chromium Ind. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544, 550 (N.D.Ill. 1978). Sanderson has failed to address any of these issues. Additionally, an allegation of injury in the district, without more, will not support the exercise of personal jurisdiction or establish venue. *Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1259 (N.D.Ill.1982); *Redmond v. Atlantic Coast Football League*, 359 F.Supp. 666, 669 (S.D.Ind.1973). In *Redmond*, the court stated, "[w]hile it may be appropriate in tort cases to find that the plaintiff's cause of action arose in the jurisdiction where the injury occurred, the current trend is to view this as a simplistic rationale to which antitrust actions are not susceptible." Clearly, Sanderson's claims against Spectrum cannot be brought in the Northern District of Indiana.

Spectrum also seeks to have Sanderson's claims dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. When evaluating a Rule 12(b)(6) motion, all well-pleaded allegations should be taken as true. *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7th Cir.1996). However, a plaintiff may not avoid dismissal under Rule 12(b)(6) "simply by attaching bare legal conclusions to narrated facts which fails to outline the basis of their claims." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991).

The court will first discuss Sanderson's claims under the Lanham Act. The Lanham Act provides that:

> Any person who, or in connection with any goods or services, . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which -
>
> \* \* \* \* \* \*
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1) (1996).

Although the Lanham Act is a remedial statute and is generally broadly construed, it is not to be construed to include all statements made by one competitor about its or another competitor's product. *Gillette Co. v. Norelco Consumer Products Co.*, 946 F.Supp. 115, 134 (D.Mass.1996)(denying motion for preliminary injunction with respect to allegedly disparaging inserts contained in product packaging). To properly plead a violation of the Lanham Act it is necessary to allege, *inter alia*, that the defendant made false or misleading statements about the plaintiff's products in the defendant's commercial advertising or promotion. *Medical Graphics Corp. v. SensorMedics Corp.*, 872 F.Supp. 643, 650 (D.Minn.1994); *Wobble Light, Inc. v. McLain/Smigiel Partnership*, 890 F.Supp. 721, 725 (N.D.Ill.1995). Four factors are used to determine whether representations are made in "commercial advertising or promotion": (1) the representations must be commercial speech; (2) they must be made by a defendant who is in commercial competition with the plaintiff; (3) they must be made for the purpose of influencing consumers to buy defendant's goods or services; and (4) they must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *Medical Graphics Corp.*, 872 F.Supp. at 650, *citing Gordon & Breach Science Publishers S.A. v. American Inst. Of Physics*, 859 F.Supp. 1521, 1536 (S.D.N.Y.1994).

If a written publication is not advertising material, or distributed to the general public for the purpose of promoting a product, it does not constitute commercial advertising under the Lanham Act.

*Marcyan v. Nissen Corp.*, 578 F.Supp. 485, 507 (N.D.Ind.1982), *aff'd*, 725 F.2d 687 (7th Cir.1983). In *Marcyan*, the allegedly false misrepresentations were contained in a user's manual provided to the purchaser of the defendant's product (exercise equipment) together with the product. 578 F.Supp. at 507. Even though the manuals were available at trade shows the court found in favor of the defendants because the purportedly false endorsement was never made available to the general purchasing public or in sufficient quantities to constitute an advertisement. *Id.*

In *Gordon & Breach Science Publishers S.A.*, 859 F.Supp. at 1543, the court noted that allowing Lanham Act claims to proceed without requiring a showing that speech which appears fully protected is in fact undeserving of full First Amendment protection would cast a substantial chill on the "robust exchange of ideas." Otherwise, would-be contributors to academic debates may be deterred from voicing their opinion, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or for fear of the expense of having to do so. *Id.*

Spectrum argues that Sanderson has failed to allege any of the indicia of commercial advertising or promotion. Spectrum points out that there are no allegations, or facts from which it may be determined, that the subject statements were commercial speech, that they were made for the purpose of influencing consumers to purchase Spectrum's goods, or that the statements were disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion. Spectrum further notes that Sanderson's complaint does not explain what Spectrum's alleged statement were, to whom they were made, or what the business or commercial purpose of Spectrum's repre-

sentations were. Spectrum thus concludes that Sanderson's unspecific allegations fail to raise Spectrum's actions to a level of public activity that constitutes advertising or promotion.

In response, Sanderson directs the court to several exhibits which he argues are "commercial speech". These exhibits include a "Purdue Report" published by the Water Quality Association in 1985. As this court noted in its Order of June 9, 1999, Sanderson does not connect the study in any way with Spectrum. Nor has Sanderson connected any of his other exhibits, which constitute various catalogs and correspondence between persons or entities not presently before the court, to Spectrum. This court agrees with Spectrum that Sanderson has failed to properly articulate a Lanham Act claim. Accordingly, the court will dismiss Sanderson's complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.

*Johnson's Motion to Dismiss*

Johnson has requested dismissal of Sanderson's cause of action for improper venue and lack of personal jurisdiction. Johnson is a Texas corporation with its principal place of business in Houston, Texas. As noted above, 15 U.S.C. § 22 is the relevant venue provision in the instant case. Section 22 provides that an antitrust suit may be brought in the judicial district in which a corporation is an "inhabitant" and in any district where the corporation transacts business. In determining whether a corporation is transacting business in the district, the court looks at whether, according to everyday business concepts, the corporation transacts business of a substantial nature within the district. *United States v. Scophony Corp.*, 333 U.S. 795, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). In order to transact business of a substantial nature in a district, a corporation's contacts with that district must be somewhat regular and continuous; meager, sporadic dealings within the district are not sufficient. *King v. Johnson Wax Associates, Inc.*, 565 F.Supp. 711, 716 (D.Md.1983). Further, where the contacts relied upon to establish venue bear no relationship to the plaintiff's suit, the point at which the defendant must be transacting business in the district is the time the suit is filed. *Id.* at 717.

Johnson claims that the undisputed evidence before the court is that it has transacted no business in the Northern District of Indiana, let alone regular and continuous business. Johnson does not advertise in publications specifically targeted to residents of Indiana, and it has no sales distributors or salesmen in Indiana. Johnson avers that on the two occasions in which it made sales in Indiana, those sales were made in the Southern District of Indiana.

Sanderson has completely failed to discuss the question of proper venue in his response to Johnson's motion to dismiss. As there is no proper showing that Johnson ever transacted business in the Northern District of Indiana, it is clear that venue is improper in this district.

Johnson also asserts that this action should be dismissed for lack of personal jurisdiction over Johnson. A federal district court may exercise personal jurisdiction over a nonresident defendant only if a court in the state in which the district court sits would have such jurisdiction. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir.1994); *Gallert v. Courtaulds Packaging Company, Inc.*, 4 F.Supp.2d 825, 828 (S.D.Ind.1998). Because Indiana's long arm statute, Ind. Trial Rule 4.4(a), is deemed to extend the State's personal jurisdiction to the constitutional limit, the inquiry regarding personal juris-

diction focuses upon the scope of the due process clause under the circumstances. *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990). The due process clause has been interpreted to protect a nonresident defendant from binding judgments of a forum unless the defendant has established certain "minimum contacts" with that forum. *International Shoe company v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). These minimum contacts must be established by a defendant's purposeful acts. *Id.*

These minimum contacts may create "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). General jurisdiction is for suits neither arising from nor related to the defendant's contacts. Such jurisdiction is permitted where the defendant has "continuous and systematic general business contacts" with the forum. *Id.* at 1873.

 It is clear that this court has neither general nor specific jurisdiction over Johnson. With respect to specific jurisdiction, a forum's exercise of specific jurisdiction over a nonresident defendant, which has not consented to suit in that forum, is proper when the defendant has deliberately directed its activities toward forum residents, and the litigation results from alleged injuries that "arise out of or relate to" such activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In the present case, it is undisputed that Sanderson's antitrust and other claims do not arise out of Johnson's business contacts within the state of Indiana.

 Likewise, Johnson is not subject to personal jurisdiction under the doctrine of general jurisdiction. As noted, Johnson is a Texas corporation with its only offices located in the State of Texas. All of Johnson's employees are employed in Texas and it has no employees, sales agents, distributors or representatives in the State of Indiana. Moreover, Johnson has no office and owns no property in Indiana, makes no direct solicitation for sales in Indiana, and does not advertise in any publications published in Indiana or in publications specifically directed to residents of Indiana. Although Johnson made, on two different occasions, sales in the state of Indiana, those two isolated sales do not constitute the sort of "continuous and systematic" contacts with Indiana justifying suit against Johnson on causes of action arising from dealings entirely distinct from those activities. Consequently, as both venue and personal jurisdiction are lacking, Johnson's motion to dismiss will be granted.

### WQA's Motion to Dismiss

The WQA seeks to have this cause of action dismissed for failure to satisfy the statute of limitations, failure to state a claim, lack of personal jurisdiction and improper venue. The WQA's motion to dismiss is offered in alternative to its Rule 12(e) motion for more definite statement, which motion is currently pending before this court.

Sanderson's complaint alleges that the WQA undertook the following acts:

1. Conspired "to denigrate magnetic water treatment generally, and Plaintiff's products in particular, intended to restrain Plaintiff from providing magnetic water treatment and devices." Complaint at ¶ 16.

2. Conspired "in the 1970's ... to discredit and malign magnetic water treatment." Complaint at ¶ 20.

3. "[U]se[d] ... various studies... derogatory to magnetic water treatment..., including studies commissioned by the [WQA] and conducted at Purdue University." Complaint at ¶ 22(1).

4. "[B]an[ned] the display of magnetic treatment devices at the trade show sponsored by the [WQA]." Complaint at ¶¶ 22(3), 38.

5. "[I]nstigat[ed] investigations [of magnetic treatment devices] by various public officials." Complaint at ¶¶ 22(4), 42–43.

6. Engaged in a "campaign of oral and written statements which are false ... about the products, inventions and businesses of Plaintiff." Complaint at ¶¶ 23, 39.

7. Commissioned, approved and publicized a study by Professor James Alleman of Purdue University that the WQA knew was flawed and that concluded that magnetic water treatment was not beneficial. Complaint at ¶¶ 32–37.

In Sanderson's complaint, the only date of alleged activity by the WQA is "the 1970's". Thus, the WQA asserts that each of Sanderson's claims against it is barred by the applicable statute of limitations. ▮ The Clayton Act, 15 U.S.C. § 15(b), provides a four-year statute of limitations for private actions under § 1 of the Sherman Act. The statute of limitations begins to run when the cause of action accrues. Ordinarily, a cause of action accrues under the antitrust laws when the plaintiff suffers an injury to his business. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Sanderson's complaint was filed on September 3, 1999 and, consequently, any claim for injury to his business suffered before September 3, 1995 is barred by the statute of limitations. *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 268 (7th Cir.1984)(claims for damages arising from exclusion of market accrue "as soon as the exclusion occurs" and will be time-barred if brought more than four years after accrual).

Clearly, Sanderson's complaint does not allege a timely cause of action under the Sherman Act. The complaint alleges only that the WQA conspired "[i]n the 1970's ... to discredit and malign magnetic water treatment." Complaint at ¶ 20. Sanderson's complaint is completely devoid of any allegation that anti-competitive conduct occurred thereafter. Therefore, Sanderson's Sherman Act claim is barred by the statute of limitations.

▮ The WQA also asserts that Sanderson's Lanham Act claim is likewise barred by the statute of limitations. The Lanham Act does not have a specific statute of limitations. Rather, it incorporates the statute of limitations for the most analogous state law cause of action. *Hot Wax, Inc. v. Warsaw Chem. Co.*, 45 F.Supp.2d 635, 647 (N.D.Ill.1999). The most analogous statute of limitations in Indiana is the two-year statute for injury to person or character or for a "forfeiture of penalty given by statute." Ind.Code § 34–11–2–4; *Ashland Oil, Inc. v. Arnett*, 656 F.Supp. 950 (N.D.Ind.1987). In Indiana, a cause of action accrues when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir.1995). There is no allegation in Sanderson's complaint that he was not fully aware of the alleged public campaign "to malign and discredit" magnetic water treatment.

Therefore, as Sanderson's complaint was filed on September 3, 1999, and does not allege any claim for injuries to his business purportedly suffered after September 3, 1997, his claim is barred by the statute of limitations. As Sanderson fails to allege injury after this date, his Lanham Act claim will be dismissed. Likewise, although it is unclear precisely what Indiana common law claims Sanderson is asserting, any state-law claim would presumably involve "injury to person or character" and also be subject to the two-year statute of limitations. Consequently, Sanderson's state-law claims are also barred.

The WQA next argues that even if Sanderson's claims were timely, the allegations in Sanderson's complaint do not state a proper claim under the Sherman Act or the Lanham Act. To state a claim under the Sherman Act, Sanderson must plead "(1) a contract, combination or conspiracy; (2) a resulting unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *In re Brand Name Prescription Drugs Antitrust Litig.*, 1999 WL 33889 *14 (N.D.Ill., Jan.19, 1999); *Denny's Marina, Inc. v. Renfro Productions, Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993). The WQA claims that Sanderson's complaint fails to identify either a relevant product market or geographic market, and thus his Sherman Act claim should be dismissed.

■ Sanderson, in his response brief, asserts that Paragraph 49 of his complaint refers to the relevant market, being the market for water treatment to control scale. The court finds such a broad statement to be too vague to properly state a claim under the Sherman Act and, moreover, Sanderson has still failed to identify a relevant geographic market or to identify any sort of conspiracy beyond his conclusory allegations that "Defendants and their co-conspirators have actively participated in a conspiracy." Complaint at ¶ 22. Such conclusory allegations are insufficient to withstand a motion to dismiss. *Hoagy Wrecker Service, Inc. v. City of Fort Wayne*, 776 F.Supp. 1350, 1357–58 (N.D.Ind.1991).

■ The WQA further argues that Sanderson has not pled a proper Lanham Act claim, as he has failed to allege any commercial advertising or promotion by the WQA. In fact, the complaint does not even indicate that the WQA has a product to advertise or promote. As an allegation of commercial advertising or promotion is an essential element of a Lanham Act violation, Sanderson's Lanham Act claim must be dismissed. 15 U.S.C. § 1125(a); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir.1999).

■ Finally, the WQA contends that Sanderson's claims should be dismissed for improper venue and lack of personal jurisdiction. The WQA first argues that Sanderson's complaint alleges no genuine basis for personal jurisdiction as the sum total of the WQA's alleged Indiana contacts are: (1) the WQA transacts business in Indiana; and (2) the WQA commissioned a study at Purdue University that was allegedly false. Complaint at ¶¶ 8, 22(1), 32. Clearly, these allegations do not support personal jurisdiction over the WQA as a conclusory allegation that the WQA transacts business in Indiana cannot demonstrate general jurisdiction. *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)("mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous'"). *See also Charlesworth v. Marco Mfg.*, 878 F.Supp. 1196, 1201 (N.D.Ind.1995)(noting that "[i]n practice, the standard for establishing general jurisdiction is fairly high" forcing the court to "scrutinize the nature and quality

of the contacts of the defendant with the forum state").

The undisputed evidence before this court shows that the WQA is an Illinois non-profit corporation, with its headquarters and employees in Illinois. The WQA is a trade organization of manufacturers, dealers and suppliers to the water treatment industry with 2,462 members worldwide. The WQA has 52 members in Indiana, and those members (like all members) receive mailings regularly. The WQA does not advertise in any publications published in Indiana or in publications specifically directed to the residents of Indiana. The WQA does not direct any mailings or publications to the public at large in Indiana, or any other state. Affidavit of Peter Censky at ¶¶ 2, 3, 4. There is no doubt that this court does not have general personal jurisdiction over the WQA.

Likewise, Sanderson's complaint contains no allegation that would support specific jurisdiction over the WQA. Although Sanderson alleges that the WQA sponsored an eleven-year old study into the effectiveness of magnetic water treatment, this is insufficient to confer personal jurisdiction and, in any event, Sanderson has failed to explain to the court how this study is related to his current claims against the WQA. Consequently, the court finds that personal jurisdiction is completely lacking over the WQA.

■■■ With respect to venue, it is clear that for purposes of Section 22 of the Clayton Act the WQA is not an inhabitant of the Northern District of Indiana. Nor has it been shown that the WQA "transacts business" in this forum. The WQA's only contact with Indiana is the delivery of its mass mailings to those of its members who reside in Indiana. Such a limited contact does not constitute the "transaction of business" required for venue. *Mid-*

*west Fur Producers Ass'n v. Mutation Mink Breeders Ass'n,* 102 F.Supp. 649 (D.Minn.1951)(no venue where membership association's activities limited to providing advertising for members in national publications and selling members' products for fixed commission; the only connection with forum state was instate members enjoyed benefits of membership).

*Spectrum's Motion for an Award of Costs*

■■■ Spectrum seeks an award of its costs, including attorney's fees, that it incurred to defend the previous action filed by Sanderson against Spectrum. Rule 41(d) of the Federal Rules of Civil Procedure provides:

**Costs of Previously–Dismissed Action.** If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

In support of its motion, Spectrum points out that Sanderson's previously filed case against Spectrum alleged violations of the Lanham Act arising from Spectrum's purported disparagement of the magnetic treatment of water, just as Sanderson does in the case at bar. Spectrum notes that the substantive paragraphs directed against Spectrum in this case are lifted almost verbatim from Sanderson's earlier complaint. As in the previous case, Sanderson alleges that Spectrum has engaged in a campaign of oral and written statements which are false, or which omit material facts, about the products, inventions and businesses of Sanderson (*i.e.,* the manufacture and sale of devices that magnetically treat water).

Spectrum has included, as an exhibit to its motion, the affidavit of Duane D. Now-

lin, which sets forth the fees and costs paid by Spectrum to its legal counsel. Due to the pending litigation between the parties, Spectrum redacted the detailed time entry descriptions contained in the attorney time sheets. Spectrum requests leave to file unredacted copies of the time sheets with the court for an *in camera* inspection.

This court finds that an award of fees and costs is precisely appropriate in the present case. Sanderson has attempted to relitigate the same claims against Spectrum after this court ruled that personal jurisdiction was not present over Spectrum and that venue was improper in this district. Nevertheless, Sanderson proceeded with his present claims against Spectrum, without even putting forth a good faith argument in support of venue or personal jurisdiction. Moreover, Sanderson's claims are woefully lacking in any factual basis. Accordingly, Spectrum's motion for an award of costs will be granted. The precise amount of the award will be determined after unredacted copies of the attorney time sheets have been filed. As this court has dismissed all of Sanderson's claims against the defendants there is no need for an *in camera* inspection of the time sheets and thus they should be filed as part of the court record.

*Conclusion*

For all of the foregoing reasons, the motions to dismiss filed by Spectrum, Johnson and the WQA are all hereby GRANTED. Further, Spectrum's motion for an award of costs is also hereby GRANTED, with the amount of the award to be determined after further filings are made with the court in accordance with this order.